Good morning. Welcome to the Richard Chambers Courthouse here in Pasadena. It's a pleasure to be here today. We have several cases, but a number have been submitted. Eduardo Chitay v. Pam Bondi, Cesar Alberto Romero Cardoza v. Pamela Bondi, and Simon Antonio Orellana Aguilar v. Pamela Bondi have been submitted on the briefs. So the first case on our docket set for oral argument this morning is CitiGroup, Inc. and Banco Nacional de Mexico v. Salvador Villar. So if counsel is ready to proceed, you may come forward. Good morning. It's Brian Van Vleck on behalf of appellant Salvador Villar. Let me just start by saying I think the first and simplest way to resolve this matter is that it's indisputably true that the arbitrator's award of injunctive and declaratory relief, in this case, is barred due to the jurisdiction stripping statute of the National Bank Act, the remedies of the National Bank Act, section 1818I1, because it is explicitly the basis of the arbitrator's injunction and declaratory relief is explicitly based on enforcing an alleged violation of the FDIC prohibition order. So you're relying on the language, it would review, modify, suspend, terminate, or set aside a prohibition order, an FDIC prohibition order? Even more than that, that is one clause of the statute. There's two clauses arguably three, but the significance, the plain language of the statute, when you when you parse it, the first part of the statute says that a federal court may have jurisdiction when the agency moves for an injunction to enforce its own order. And then the second clause says that except as otherwise provided, meaning that one exception, there shall be no jurisdiction to enforce, affect, etc. etc. So in context, it's the plain language is saying, well, is there an FDIC prohibition order? You're just saying that nobody outside of the FTC, FDIC, can ever seek an injunction. That's correct. That's what Congress has held. Well, Congress hasn't held anything. They've said something. Is there a court that's agreed with you on that? Yes. Numerous courts. The best, the most on point cases, I would say, is the Doral Bank case. It was out of the District of Puerto Rico, which is actually very similar on the facts. That was a that came in and it applied to the district court for an injunction and declaratory relief that it did not have to follow another civil another civil judgment against it because it said that that civil judgment would interfere with a consent decree, an order covered by 1818. And that consent decree was in existence? It was. Is there a consent decree here in existence? Well, the prohibition order, they're all, it's a form of order issued, enforcement order, but issued by the agency under 1818. So it's the same status as a as a consent decree. And there is, in fact, another consent decree, which the arbitrator cited as a basis, which was just the earlier. But your argument is that there's just no authority outside of the FTC at all. What if we don't agree with you? Do you have a backup argument that the enforcement of the arbitral award would be reviewed? Or that that enforcement of the arbitral award would review, modify, suspend, terminate, or set aside the prohibition? Yes, it would do that also. I don't believe we have to do that. It would do that because the prohibition order drafted by the FTC is very specific. What it says is that Mr. Villar is to be prohibited from participating in the affairs of a covered entity. There is actually several. This is one. But what the arbitrator, how he has interpreted it, and then now enforced it through declaratory relief and injunctive relief, he has interpreted that participation in the affairs as covering receipt of monetary relief awarded in a separate judgment. It's quite a stretch, you know, and that's exactly the kind of interpretation that it should be for the FDIC to make as to what the meaning of its own order. So you're not saying it doesn't fall under terminate or set aside or suspend, but you are arguing that it would review, and not even review, you're suggesting it more modify. Modify is probably the best term. It also modifies it in the sense that it's right in the order that it can be modified by the FDIC at any time. The FDIC is supposed to have the ability to, based on events or changes of policy or whatever, in the discretion of the FDIC, that it can, you know, I forget the language from the order itself, but it can basically rescind the order, modify the order. And for that matter, there's a provision that it can grant a waiver to the order based upon application, you know, by the subject party. And the arbitrator in his declaratory and injunctive relief has said, no, in fact, this is a permanent injunction that the judgment can never be enforced under the prohibition order, and that the time to do so in the ruling of the arbitrator has expired under latches, you know, is what he said. So that's another, it's basically withdrawing the FDIC's ability to modify and apply and interpret its own order in practice. It's just taking that out of the hands of the FDIC and placed it in the hands of, you know, private party, in this case, the arbitrator, and then confirmed by the court as to the final meaning of the prohibition order. And, you know, we say that's just antithetical to the whole structure of the National Bank Act, which is to give, you know, absolute enforcement power and discretion to agencies and to, you know, absolutely you know, bar potentially inconsistent judgments, especially here by an interested party, a bank who's also subject to the regulation of the FDIC, goes off to, you know, court, or in this case, an arbitrator confirmed by a court, and gets a ruling that's, you know, potentially inconsistent. And here, you know, we argue it very much is inconsistent, although I don't think that we don't need to show that it was wrong on the interpretation of the FDIC order. Just the mere fact that they are obtaining and interpreting a final interpretation of the FDIC's order through the court is completely usurping the FDIC's regulatory jurisdiction that, you know, by the nature of the statute, is very closely guarded, you know, hence the jurisdiction stripping nature of anything that's inconsistent with that. And there's a lot of reasons for that. The FDIC are the experts. They know banking. They're supposed to be implementing policies that they, you know, are concerned about, about the soundness of banks. You know, it's not for courts. It's not a, it's not a case of cumulative remedies, you know, for like a, for a wrong that's been defined. It's more of a balancing of policy considerations that the FDIC is supposed to be implementing. Are you citing Doral to support your position on this? Is that right? Yes. Well, in Doral, the parties affirmatively asked the district court for a declaratory judgment to interpret the prohibition award. Here, the parties already got an interpretive or, you know, from an interpretive order or a response from the FDIC in the letter that the agency sent. So, I'm trying to figure out how there's an issue that the district court here would be exceeding its jurisdiction. Well, I mean, the opinion letter is, the award goes way beyond the opinion letter. Matter of fact, the meaning of the opinion letter was greatly disputed by the parties. We contend that it supports our position that he can obtain monetary relief by collecting a judgment. And in fact, the arbitrator in his award is looking at, is giving his interpretation of the opinion letter and also an interpretation of a separate opinion letter by the Fed, the Federal Reserve, and saying that the Federal Reserve's opinion letter should take precedence in doing this whole kind of, you know, it's his interpretation of the opinion letter. And again, I think that the nature and structure of the statute is such that it's not for the court or an arbitrator to decide what the meaning, matter of fact, I'd say the fact that the FDIC and the Federal Reserve had weighed in with their own opinion letters. I mean, if anything, I believe that supports our position because they're already aware of the issue. They're already taking positions on it. And whatever they want to do with their positions, how they assess the matter should be done. If they want to take a close look at the Mexico judgment, other issues, that should be their right under the statute, not the right of federal court or the arbitrator. I was trying to figure out why your client didn't ask the FDIC for an interpretation or modification of the prohibition order before appealing the Mexico Labor Board's initial denial of relief. Well, he didn't feel that that was necessary. He'd been advising the FDIC all along of the, and this is in the record, recited in the award, of the progress in the Mexico action and providing copies of the documents in the Mexico action to the FDIC and asking if they had any objection to what was going on in light of the prohibition order. They were aware and never took a position. They consciously took no position, but they did not oppose. They did not tell him that, no, go no further or you're violating the prohibition order, which they would have the right to do, and they did not. So that's the short answer on that. And of course, it was the plaintiffs who initiated the court action to enjoin the collection of the Mexico judgment. So that, you know, that arguably raised the issue and then that's the circumstance that led to the opinion orders is that the court asked us to obtain opinion letters from the agencies they provided, and they were, you know, they are what they are, but they're not conclusive at this point. It seems, though, that our court has already decided that there is jurisdiction in this case. I'm trying to figure out why law of the case doctrine shouldn't apply here. Well, law of the case, well, first of all, I don't believe law of the case should apply to basically a pure ruling of law on a full record. Going up to the ninth circuit in this case, it was just on the motion panel. It was just on a TRO preliminary injunction to maintain the status quo until the merits of the underlying case could be decided. So the only issue in front of the motion panel was whether that TRO, you know, without any final adjudication of the merits was, you know, was proper. They did not purport to make, you know, there's no final record. Of course, the award hadn't even been issued yet, so there was no award in front of them. And they did not make a conclusive ruling of law as to the meaning and the scope of 1818. But the briefing before that court asked or requested that the court find that the declaratory injunctive and contract claims stated in plaintiff's complaint all be dismissed as beyond the jurisdiction of the court. So it seems like the arguments, you know, in the first appeal and the court's decision in response to that specific request didn't narrowly apply to the preliminary injunction. But I wanted to give you an opportunity to respond to that. Sure. Well, I mean, think about law of the case. I mean, it's not supposed to be, this was a very different, it was a very different procedure on a very different record in front of the court at that time. And part of law of the case is, I do not believe you're supposed to interpolate, you know, what the implied interpretation of the statute was from their ruling. The ruling itself doesn't say anything to indicate that, you know, final enforcement by, you know, of any future award by the arbitrator would necessarily be within subject matter jurisdiction. And I would just add that since this is a matter of subject matter jurisdiction, I mean, it has to be assessed at every turn. It's not a matter that can be waived or that should be decided. And there is case law on that point that subject matter jurisdiction should not be, is not a proper subject of law of the case because it's jurisdictional. So you used a lot of your time on this jurisdiction question. I don't know if you wanted to make some, just a brief comment on the merits because I'm not sure what your best case is to support your argument that the arbitration agreement violated California Civil Code section 47B or the section 1668. Okay. Well, on that, it's because the court or the arbitrator, well, first of all, the jurisdictional issue is on the merits because we're talking about vacating the award. And as we talk about in our case, whether you call it public policy exception or public policy doctrine or something else, there's longstanding case law that where an arbitrator awards relief that is unlawful or unenforceable, you know, courts are not going to uphold it or not, you know, are required to vacate it. And the contract ruling that the arbitrator made is tied in with the 1818 because the subject matter jurisdiction because the arbitrator held that the reason that filing a post-termination action in Mexico supposedly violated the employee handbook was because that action would supposedly result in the violation of the FDIC prohibition order. So, you know, he's, you know, whether it's contract or whether he's allegedly enforcing the employee handbook or enforcing the prohibition order itself, in both cases, the analysis is dependent on his finding that he's enforcing an alleged violation of the prohibition order. Okay, thank you. May it please the court, Lawrence Rosenberg for Citigroup and Banco Nacional de Mexico. In this case, Mr. Villar simply is seeking to re-litigate the merits of an arbitration award decided against him, which is beyond the standard scope of review under the Federal Arbitration Act. This court should affirm the confirmation of the arbitration award for three reasons. First, the arbitration award does not in any way violate the statutory bases to vacate an district court under the appropriate legal standards. Second, the arbitrator had jurisdiction, and I'll turn to that in just a minute. And third, no public policy would support overturning the arbitration award. Given the length of time spent on jurisdiction, I'll turn there first. So there are two fundamental reasons why Mr. Villar's arguments on jurisdiction should be rejected. First, as the Chief Judge mentioned before, the Ninth Circuit already decided this issue on the prior appeal, and whether under collateral estoppel or law of the case, this panel should follow that ruling. And while Mr. Van Vleck has argued that somehow... Can you address how the law of the case applies to jurisdictional determinations? Does it apply in the same way that it... I mean, I understand law of the case generally. If it's previously decided, we're bound by that. Is the same always true of jurisdictional determinations, or do we have an independent duty to look at that? I wouldn't say it's always true, and it is true that the court does assess jurisdiction as a case goes on, but where the same, it's identical, and has already been fully decided by a prior panel in that circumstance, we believe, at least under law of the case, that the doctrine applies. I mean, we also think it applies under collateral. Have a case for that? We don't have a specific case in this circumstance, which is highly unusual for a court to resolve a jurisdictional argument on a first appeal, and then have a second appeal raise the exact same argument. I mean, we've looked... Isn't that... Ferreris sort of says that, doesn't it? That law of the case doctrine applies to jurisdictional determinations. It does, yeah. You're just saying that it's not exactly analogous. It's not exactly analogous. I don't want to over-claim it, but I would say that if you look at the law of the case doctrine, the cases from this court say that law of the case should apply unless there's changed circumstances, right? The factors in the Alexander case are, unless the first decision was clearly erroneous, an intervening change in the law has occurred, the evidence on remand is substantially different, other changed circumstances exist, or a manifest injustice would otherwise result. If we agree with this panel, do we even need to go into this? I mean, maybe it's better to avoid law of the case in a jurisdictional question and just decide it, assuming we agree with it. Yeah, that's fine. I think the court could just decide that the merits of the jurisdictional argument are the same way that the prior panel decided it on the merits and not rule on law of the case. But your point is there's no new arguments here. It's all the same. Law of the case presumably would still bind in a future case on a factual or legal issue, even if something new was brought to the court's attention. Right. But in a jurisdictional, that exception might not apply, but it's not applicable here. That's basically what you're saying. Yeah, I think that's right, your honor. I think that's right. And I think that, I don't think this is a tough issue for the court to resolve on the merits. I mean, the rationale of the prior panel was that, look, the jurisdictional argument is not what the statute says. The statute says you can't directly modify or interpret the order. That's what happened in the Doral Bank case. That's why the case said that they couldn't proceed there. But here, it's a completely, it's a third party that isn't a party to the prohibition order city group that is simply seeking a parallel remedy. And it is true that the prohibition order supports the parallel remedy, but it's on enforcing that order. Right. We're not seeking civil penalties like the FDIC would. We're not seeking the kind of injunction that the FDIC would seek in an enforcement order. We're seeking completely parallel relief. And no case has said that that's impermissible, right? I think the case said it is permissible. Well, yeah. We've cited the Rex versus Chase case, the Inree J.P. Morgan case, which are cases that say where you're seeking a parallel remedy that's consistent with an FDIC order, that's permissible. That's permissible. And those were cases where parties were seeking a parallel remedy. And those were cases that were cited to the prior Ninth Circuit panel and that were cited to the arbitrator. For example, I'll just quote a couple sentences from the arbitrator considering those cases specifically. He said, claimants are not a party to the prohibition order, and Section 1818 provides them with no judicial remedies in connection with the order. Claimants are asserting they're separate remedies, and he's quoting the Rex case, including an anti-suit injunction under Ninth Circuit precedent. These separate remedies are entirely independent of the prohibition order and the FDIC's ability to enforce it, nor would it make sense to allow Mr. Villar to use a prohibition order, finding that he engaged in violations of the banking laws, as a shield from liability against non-parties to that order. That's at 2 excerpts record 181. And I think that captures it in a nutshell. This is a separate, independent, but parallel remedy, and it is fully consistent with the letters obtained at the district court's request from the FDIC and the Federal Reserve, which say that no relief that reinstates Mr. Villar would be permissible under the prohibition order, and says that any payments would have to be evaluated under the golden parachute rules, and the Federal Reserve, which was the operative agency that controls Banamex, says that it may very well violate the golden parachute rules. You gave three reasons. I wanted to make sure I got the third. You said it does not violate any statute, that they're seeking to really re-litigate the arbitration award and let them do it because it doesn't violate any statutes. There is jurisdiction for the reasons that you've just... Right, and there's no public policy that would support it. And I mean, if there are any more questions on jurisdiction, I'm happy to talk about that more. But if you want me to turn briefly to public policy. So first of all, this court does not have to definitively rule in this case whether the public policy ground to vacate still exists. We think it doesn't under Hall Street. And if you look at all the cases that have since Hall Street that have done a public policy rationale, none of them has fully engaged with Hall Street and says why there's still a public policy ground. I acknowledge there are cases, some from this court, just a few from this court, and then a few from courts in other circuits, but none of them really fully engages. And if you look at the Stolt-Nielsen case that followed Hall Street, the Supreme Court was pretty clear that Hall Street is the law. And in Stolt-Nielsen, there's a footnote. Hall Street, and I mean, I tend to agree with you. We may not need to discuss this, but the problem that I find where this is an interesting issue, if we were to go down this road, is Hall Street is based on an interpretation of the statute. And the Supreme Court previously had been clear that the public policy exception was a common law issue. So it's not intuitive to me that Hall Street got rid of that public policy exception. Now, I mean, you could debate whether the Supreme Court would in a future case, but I'm not sure they have yet. Right. And that's why I think if you look at Stolt-Nielsen, they sort of and say, look, they haven't talked about public policy. They say in Stolt-Nielsen, the parties that argued manifest disregard of law, which is not quite public policy. And the court in a foot, right, right. And the court in a footnote said, we're not even sure that doctrine survives Hall Street. And then said, but in Stolt-Nielsen, it was a pure statutory interpretation question of the FAA as interpreted in a prior Supreme Court case and said, we don't need to reach any of that because we're going to rule based on the statute. So I do think Stolt-Nielsen calls it into question, but you don't need to resolve it because there is no public policy here that supports Mr. VR. Number one, he cites the California litigation privilege and section, I think it's 1668, right. The arbitrator fully considered all of this, tens of pages of briefing on both issues, fully resolved it against Mr. VR. The district court did review for manifest disregard of the law and said, I'm looking at this and there's nothing that even comes close to that in the record. Let me ask you this because Mr. VR argues that the employee handbook and code of conduct was never supposed to be a contract between the parties. If we were to look at public policy, why shouldn't we take this into consideration when determining whether the district court properly affirmed the arbiter award? So let me try to answer the question precisely. The employee handbook and the code of conduct were signed. They weren't just like handed out, they were actually signed and acknowledged by employees, particularly Mr. VR. Mr. VR was the CEO of Banamex USA. He was supposed to be as familiar as anyone in the company with those doctrines and he signed it and it was binding. The question of whether it was binding was again, fully litigated before the arbitrator and he said that it was and it can't be, I mean, there's no case that I'm aware of that says public policy doesn't allow an employer to have rules for employment that the employee agrees to as part of his employment contract. And so because it was a signed document that he was required to sign and agree to and he acknowledged at the arbitration hearing, at his deposition, that he was bound by the provisions of those, that's undisputed, that he was bound by those provisions. So as a matter of public policy, even if you consider it, I just don't think there's anything there. Those are documents that he acknowledged he was bound by and that's what the arbitrator relied on and I also would note that they include statements like not having conflicts of interest, not doing anything that particularly subjugates the interest of the company to your personal private interests that the arbitrator found Mr. VR had violated that are quasi-fiduciary responsibilities of the CEO of a bank and the arbitrator carefully looked at that and said Mr. VR, after hearing the luminous testimony, days of testimony for Mr. VR, said that he had violated those duties and therefore that this contract showed that he had breached to the covenant of good faith and fair dealing and that was part of the basis for the arbitration award. And so there's no public policy that prevents that. The litigation privilege as the Novellier case that we've cited doesn't prohibit contracts where a party waives certain kinds of claims and here Mr. VR promised that he would not put the company in a conflict of interest situation. Those are specific duties in the employee handbook in the code of conduct and the only thing in this very unique and unusual case that happened is that Citigroup filed a motion for an anti-suit injunction to prevent this Mexican litigation, the remedy of which would cause us to run completely afoul of federal law. And so I mean there's no case where the litigation privilege has ever applied really number one to federal claims to begin with. I mean there are cases that say it's limited to state claims. Sorry counsel, does your position, is it affected by his argument, say that maybe some of the payments wouldn't have actually violated the FDIC order? Is it enough that, I mean let's assume for the moment that's true, you know, does that affect the merits of your argument here? I don't think it does your honor because that's all sort of error of law stuff that goes to the arbitrator's discretion here. It's not something for this court to review. But the arbitrator made findings that there was no ability for any relief for Mr. Villar unless he presented himself for reinstatement to Banamex and that is absolutely prohibited by the prohibition order. And the payments he's seeking are plainly the monetary equivalent of reinstatement even under Mexican law. And there was extensive expert testimony both of Mexican law experts and of regulatory law experts that confirmed that. So I mean this is a merits determination by the arbitrator and even if he's right it's not something that goes to public policy or, you know, anything of that, you know, grand nature. Certainly doesn't go to manifest disregard of the law or anything that would be an illegal contract. So again, the litigation privilege doesn't prevent this. 1668 is something that talks about tort liability, not bargaining away your ability to bring a case in tort for willful misconduct or negligence. That has nothing to do with this case that's a contract case. So there's no policy that he's espoused that could even come close to going to a level where this court should be troubled by the arbitration award. And again, the district court did, albeit on limited review, but looked at this for manifest disregard of the law and said there simply was none. And then if you do look at public policy, there's a huge countervailing policy that supports the award, right? Here Mr. Villar tried to circumvent federal law, brought a case in Mexico that was highly dubious to try to claim he was actually an employee of Banamex, an entity he hadn't worked for in 30 years, to try to seek money that is absolutely prohibited by federal law. So the policy, to the extent the court were to consider it, strongly favors the arbitration award not vacating it. If there are no other questions, I see my time has expired. Thank you very much. Thank you. You used all of your time and I gave you time, but I'm going to give you one minute to just give a concluding statement. Okay. Just to quickly address, it's important here that the reference to relitigation and the deference given to the arbitrator's findings, that's the fundamental error here, is to just adopt the arbitrator's findings of law because the source of the deference to the arbitrator is that he's acting within the bounds of a contract. Stolt, Niels, and other cases in the Ninth Circuit have all made clear that the reason an arbitrator gets deference is because his ruling is the party's contract because they contracted for that ruling, okay? But when an arbitrator makes a ruling that the parties could not have contracted for themselves because it violates a separate statute or public policy, such as agreeing to an illegal contract to waive rights ahead of time and waive a right to lawsuit, then there is no deference. And the cases under the sort of public policy exception have made clear that it's for the court to decide if a remedy, and there's an issue too, the difference between the remedy here, which is the unlawful, of supporting an unlawful contract versus any other part of the ruling. So it's not entitled to deference. The arbitrator, the court should have looked to the fact, for instance, under Comedy Club, the Ninth Circuit case, there was an arbitrator issued an injunction to enforce a covenant not to compete. And the court, this court said, they looked at it, they gave no deference to that, they looked at it, and they said, no, his interpretation of the covenant not to compete statute is too narrow. This violates the covenant not to compete statute, Business and Profession Code 16600. Thank you. Therefore, it has to be vacated. I appreciate it. Thank you very much. The case of Citigroup, Inc. and Banco Nacional de Mexico versus Salvador Villar is now submitted. The next case on our docket has also been submitted on the briefs, and that is the case of Janet Solis and Michael Ortega versus Advanced Weight Loss Surgical Association and Minimally Invasive Surgical Association versus T-Mobile U.S. and United Healthcare Insurance Company. So the next case on our docket, I want to thank you both very much, Mr. Rosenberg and Mr. Van for your arguments. The case has now been submitted.
judges: MURGUIA, NELSON, SUNG